Good morning, your honors. Good morning. May it please the court, William D. Evans appearing on behalf of the appellate, Louis Jefferson. This is an age discrimination case. The first part of the district court's decision favored plaintiff's charges. First of all, it was a continuing violation of doctrine which was applied and the court found that the reclassification of plaintiff that he was attacking did not achieve a degree of permanence, at least until shortly before the layoff. The reclassification, we call it misclassification, actually began in 2009. It's about two years. Mr. Evans, I'm sorry. I'm going to apologize to my colleagues in advance for the complexity of this question, which is going to be objectionable in every conceivable way. But it's my understanding that this case is a state law case. Governor, it's state statute, yes. And that the state of California has adopted the McDonnell-Douglas burden-shifting framework. The McDonnell-Douglas burden-shifting framework. That first you must make out the prima facie case. Yes. And that the judge found that you had in fact made out the prima facie case. And then the burden shifted to Boeing. Yes, after the restraining remark doctrine was taken care of. And the remark was to the effect that Boeing likes to hire young engineers. Okay, we'll get to that in a moment. And so the two reasons that had more to do with property management than being a systems engineer. And that the layoff itself was part of a reduction in force. And then the burden shifted back to you. And the spent as a systems engineer. And 10% of his time as a property manager. Yes. And the judge also took as true Mr. Jefferson's relation of Ms. Arachicka's statement that Boeing wanted younger employees with fresh ideas. I guess my question to you is, even if both of those things are true, do they tend to demonstrate that Boeing's reasons were pretextual? And why? Well, first of all, on the question of misclassification, which started this whole thing, the 90 to 10 ratio was there all the time, except for a brief time when around the time the lab was closing. That's the thermal acoustic lab was closing. He did a little bit more property work in that time, but it was totally temporary. And from that time on, from 2009, all the way to the layoff in 2011, the 90 to 10 ratio. In other words, he was still doing engineering work. 90% of the time, he had an office in engineering. We're going to accept this. This is true. And the trial judge accepted this is true. So that's one bit of evidence that the reasons given by the judge didn't accept the 90 to 10 rule. I read it to where it was rejected. And part of the rejection was the question about the 90 to 10 ratio and whether he was misclassified. There was a whole slew of, they say he was primarily engaged in property administration, but there's primarily is not 10%. What I'm trying to figure out is how this bit of evidence cuts toward the notion that the reasons given by Boeing were pretextual. Well, because there was a lot of documentary proof that the managers, many of the managers didn't really think that he was misclassified. Even though they may have come out with statements to say that. There was several documents that were obtained in discovery. The judge held under 901 that they were not authentic. Even if it's true that he was misclassified, even if it's true that he was misclassified so that they would put him at risk for firing. How does that bit of evidence suggest that there was age discrimination? Age lies around, he numbers, at the time he was 61 years old. It's his age alone that's enough to tie this to a discriminatory purpose. Yes, and then the remark about back in 2008, it was fairly close to the time that she, the manager at Arachiga, wanted to transfer him over to the property administration department. But all this is based on untruths. He was, and the judge, the trial court judge refused to accept the documents that would show that he was misclassified. But even if, I know I'm not making myself clear, even if it was true that he was at risk for being fired, how would that cut toward age discrimination? Well, because there were other things. We had evidence that there were, that there was a revolving door going, where older people were being let out, younger people were coming in, and this went on all the time. But his job was in fact not filled with a younger person, or in fact not filled at all. Isn't that true? His job was, there was a misconception about his job, and the fact that he was put in this classification, he was 61 years old, it seemed to me that would be enough proof that there's an age come in about the managers just seemingly contradict themselves. It means that the reason they have for treating him this way is false. The falsity is enough to show that there's another motive. Well, age has been focused on, and he has been mentioning it to him over the next two and a half years. There was plenty of complaint they made about the assignment, and he said it was, he was talking about age being at the bottom of it. That was denied, but there was plenty of evidence that he was claiming that this was age motivated. What evidence is that, sir? Well, March 27th, 2009, he complained to Erich Higa about the fact that this was going on, and that this was age motivated. He said it then, he said it at the time of the layoff that was coming up. He made charges against them around September of 2011, a month later he was laid off. He mentioned the fact that he was age motivated. If it wasn't age motivated, there would certainly be retaliation going on. Well, we'll get to retaliation in a second. I'm still trying to zero in on age. Just because he believes it has to do with age, is that really evidence? I think it can be evidence, and the fact that it never went away from the remarks back in 2008, if they were made by a responsible manager. Mr. Evans, may I ask you a question? Yes. There was reduction in force as to the property specialist classification, and that's when your client was terminated. Yes. Question. Was there reduction in force as to the persons who retained the engineering classifications? Well, here's the, he was put in a group of other people who were property administrators. That's the 10% thing. He was rated, although there were seven people, and they were all, all these people were various ages. There were a couple of older people, and they were rated by the supervisors of the property, government property administration department. Maybe I didn't make myself clear. I'm not was terminated in that category. I'm not interested in that. Okay. What I'm interested in probing, if you can tell me, maybe you can, maybe you can't. Had he not been reclassified as a property specialist, and had he remained in the engineering department, would he have been proof from reduction in force termination? I don't believe he would have been laid off if he was. My next, my first question was, were there layoffs contemporaneously to the layoffs of the property specialists in the engineering category? Yes or no? I think there was probably some layoffs going on. There were layoffs going on all the time, sporadically. Well. And I don't have any. Is an element of proof in an age discrimination case a but-for element? That is, that but-for his classification as a property specialist, he wouldn't have been laid off. If he remained as an engineering classification, he would not have been laid off. Can you make that proof? Well, not specifically, it's not the direct proof, but he was raided. He was laid off by the raiding of Arachiga, who is an engineering supervisor. But she was basing it on his government property. His government property classification was what I think controlled. Try to focus on my question. Had he remained in the engineering classification, can you tell me whether there were reductions in force there, which would have affected him? Or can you say he would have not lost his job? Well, if that had happened, I can't speak specific on that. Well, don't you have to speak specific on that? Don't you have to show that but-for the age-based discrimination, he would not have lost his job? Well, he was, it's hard to say, he was replaced. You're supposed to normally show that he was replaced by someone who is younger and in a job, but he can't do that because he's in a dual functional job, which was never given to anyone else. So you have to rely on, I think we have enough to show in the hirings and firings that go on, that people were, there was a revolving door of young men coming in and old people going out. Seems like that is enough. There would be some All right. Thank you, Counsel. We'll hear from Boeing and then you can come back on rebuttal. Good morning, Your Honors. May it please the Court, Daniel Fears on behalf of respondent to the Boeing Company. Could you answer the question I asked, Mr. Evans? Yes. The evidence from Ms. Shelly Walker in her declaration established that during the same period of time, Your Honor, 2008 to 2011, there was a reduction of 366 systems engineers. And during that same period of time, there was only a reduction of 16 property specialist positions. How many were there? These numbers don't mean anything without the relation of how many overall system engineers there were and how many property specialists there were. I understand. But all we have in the record are the gross numbers, Your Honor. We also have, in addition, there were two other positions under Ms. Arrechega that were also reclassified because they were viewed as having been individuals who were not performing the duties of the particular job classifications. So the appellant in this case, during the same relevant period of time, was not the only person. There were two other individuals, both of whom were reclassified. In addition, that means that those positions also went into another silo, if you will. And there's no evidence in this record, and I'm not aware of any, where the appellant in his former position as a level four systems engineer was replaced, nor was he replaced when the 2011 layoff occurred, in which he was ranked seven of seven and his position was eliminated at that time due to budgetary constraints and the loss of government funding. Do you claim, and maybe I'm wrong on this, and so please, if I am, just correct me, is it an element of an age discrimination suit based on reclassification to show that, but for the reclassification, he would not have been terminated? I think the actual test, Your Honor, goes even further because the case law, with respect to the reclassification, both federal and state case law, indicate that a neutral decision made by a company such as this, whether it's unwise, whether it's correct, whether it's mistaken, it's a business judgment. Let's assume it was age-motivated. Does the plaintiff have to show only that he was reclassified because of age discrimination, or does he have to go further and show, had that not happened, I would still have a job? Yes, he would have to go that additional step. So even if he were able to prove... Is there any evidence in this record that shows that but for the reclassification to property specialist, the plaintiff, or the appellant, would have retained his job as an engineering specialist? Yeah, none whatsoever. In fact, the evidence is to the contrary. What evidence to the contrary is there? The evidence in the declaration of Ms. Arrechega that specifically her whole goal and objective, in addition to clarifying the proper title for the appellant, she, given the reductions in force, the massive reductions in force that were occurring with respect to systems engineers, she was concerned about losing an employee or losing the appellant and others because there were many layoffs that were occurring with respect to the systems engineers. But we don't know precisely if he had remained as a system engineer if the layoffs would have actually reached him. We don't know that, do we? On an individualized micro level, one will never know because he did not remain there. We know he was not replaced there, and thus there was no need for that position, especially given his position where it was this hybrid role where he was performing property management and, according to him, performing the systems engineer work. But it would be impossible to turn back the clock. We know that there were many layoffs. They would have gone through the exact same Boeing process that they have to analyze and rank and rate individuals. There's also in the declaration from Ms. Arrechega and Mr. Gingis that because the appellant here did have this hybrid role, whether it's 90-10 or whether it's 55-45 as the company found through two audits, given that, he would have been gravely disadvantaged in being evaluated against systems engineers level four because he was, according to Boeing and its assessment, not performing all of the job duties of that. So given the massive cutbacks in systems engineers and him not performing those functions and Ms. Arrechega's desire to save him, which happened for another two years, he worked for another two years in the other position, all indications suggest that he would not have survived in that other role. Let me ask, pardon me, last question on this subject. Upon whom, step back, if showing that but for the reclassification he would have kept his job, if that is an element of the cause of action, upon whom is the burden of proof, of proving that fact? Well, ultimately, it is the plaintiff's burden of proof of establishing that but for he would have kept his job and it's certainly in the... Because it goes to damages, doesn't it? It certainly does as well and but in the McDonnell Douglas shifting burden analysis, once the company does articulate and in this case provide evidence of the legitimate non-discriminatory reasons for both his reclassification as well as his ultimate layoff, then it is the appellant's burden to prove with specific substantial evidence, not just theory or argument, not just statements that appellant made to the effect of it's unusual, not speculation or conjecture, but the case law is very clear and it's cited in our brief, the Ninth Circuit said it in the Villaramo case, Guz versus Bechtel, California Supreme Court case, that once there has been that articulation of the legitimate non-discriminatory reason, then the appellant bears that burden of establishing with specific substantial evidence that that reason is pretextual for intentional discrimination. But this is... We're at summary judgment, right? Yes. Okay. So at summary judgment we have to take what Mr. Jefferson says is true. If you combine his claim that he was misclassified and credit the claim that the misclassification was for the purpose of likely to be fired than his previous category, and you add Ms. Erichika's statement, which we also have to credit as true, which he apparently said to a large group, to a group, not directly necessarily to Mr. Jefferson, that Boeing was looking for younger employees with fresh ideas, why doesn't he get to the jury? Okay. So with respect to what you just articulated, Your Honor, his claim that he was set up must have some foundational evidentiary basis. There's not any evidence in this record that anybody was attempting to set him up. In fact, the evidence is to the contrary. The prior to the layoff that affected the government property specialist position. That's not announced, and that wasn't even an Erichika decision that was made. It was a different group that made that decision. And so unless Ms. Erichika has a crystal ball and can make a determination that two years down the road another classification is going to have a layoff, and that, gee, if he had stayed in the systems engineer position, he wouldn't be laid off when they're undergoing their own significant layoffs. Unless that could be proven with some evidence, there's no basis to essentially show that the layoff was the result of a discriminatory motive. So I understand that the plaintiff, or the appellant in this case now, has made these claims, but it's not been based upon evidence, and all of the evidence is to the contrary. Moreover, the appellant in this case concedes that in 2011, when they went through the Boeing process, multiple managers coming together, analyzing the positions and the competencies and scores and the personnel, multiple individuals agreed, human resources involved, that the appellant in this case would be subject to layoff. Someone had to be laid off, and in this case it happened to be him. And unfortunately at Boeing, when government programs shut down and there's funding, there are layoffs. We put into the record that during this period of time, there were over 4,000 or 5,000 layoffs of individuals. And in order to have a case that goes to the jury, your honor, one must establish that with specific substantial evidence, that the reason for that person being selected for the layoff is because of intentional discrimination. With respect to the way the appellant has approached this case, they haven't really said there was a discriminatory motive in the 2011 layoff. Instead, they've gone back two years and said in 2009, that is where the alleged discriminatory motive was. But there was absolutely no evidence showing that any of the decision makers reclassified the plaintiff appellant in 2009 because of a discriminatory motive. Rather, there's overwhelming evidence that there were three positions reclassified. There were two managers. Ms. Arrechaga was just one of them. There was a human resources person. There was an audit that was conducted. And then Sharon McGettigan of EEO investigated it. And if you look at her declaration and her findings, there was no evidence whatsoever suggesting that there was anything other than a desire to make his position, his title, consistent, most consistent with what he was doing. Even the plaintiff appellant in this case said that he thought his title should be logistics engineer, which would have, according to the evidence we submitted, guaranteed his layoff because there that would normally be decided by the jury, wouldn't it? No, Your Honor, because at most what there is is a dispute between the plaintiff appellant's view of what position he should have occupied and the company's view. That's a neutral business type decision that isn't cloaked with any discrimination. And that's where the is not discrimination unless you can show with specific substantial evidence that it was done specifically, that mistaken or erroneous type of decision was made for the purpose of intentionally discriminating against. Here, at most, there's a difference of opinion. The fact that the appellant thinks he should have been a logistical engineer and four people, including auditors and human and there's no evidence whatsoever that they had a discriminatory motive. Rather, they have a department that essentially audits positions because we're talking about a company that has many, many employees. And over the years, sometimes people may morph into the wrong position. So they want to have people in the right position so that when there is a cutback, they can compare apples to apples to the maximum extent possible. While there may be a disagreement between the appellant and what position he thought he should be in, that doesn't mean there's an issue of fact that it was discriminatorily decided, conceptualized or implemented. Let's talk about an issue of fact, because this is an appeal from the motion of summary judgment, which you won below, right? Yes. Now, I want you to take a look at these three pieces of evidence and tell me why these three pieces of evidence, in conjunction with each other, don't raise a tribal issue of fact as to whether the reclassification was done for purposes of effecting age discrimination. Number one, Mr. Jefferson himself makes a declaration that 90% of his work was done in engineering and not in property management, and the trial court disdained that because it wasn't corroborated. I don't have no rule that a declaration on summary judgment has to be corroborated to be believed. This is not an accomplice testimony case. Number two, the person, Arachiga, who reclassified him from engineering specialist to property specialist, was the person who, in a group, made the statement that Boeing wanted younger people. Number three, manager Frank, and I don't know if I pronounced it correctly, Zopik, agreed that the property, the government property classification was probably wrong for Jefferson and that Jefferson should have been in an engineering classification. Now, put that together, does that allow a reasonable juror to find that the reason he was reclassified was indeed age discrimination? No. Why not? Well, first, with respect to the plaintiff's view that 90% of his work was in engineering and not in the property specialist position, there is case law that says where an individual's personal view, their own subjective self-serving view, uncorroborated. As to conclusions, but not as to facts. If he says the light was red and it wasn't green, that's a fact. If he says I did 90% of engineering work, 10% of property specialist work, those are facts, not conclusions. They don't have to be corroborated. Fair enough statement, although I would suggest, Your Honor, that that is akin to a conclusion because he is giving an assessment, he's giving an approximation, he's providing 90%. He's not given any specifics as to whether, what he was specifically doing. Instead, he's giving his approximation. But having said that, point well taken. But that fact alone, I think we would all agree that if there's a difference, if, for instance, the appellant said I was doing 60% engineering and the company said no, you were doing 40%, that just means there's a difference of opinion regarding that. And that doesn't suggest age discrimination, race, national origin, gender discrimination, or any form of discrimination. It's just a business judgment that the company has to make and it's a disagreement between the parties. With respect to the third point, Zopek, Zopek was just another person who opined and that is not, it's just another opinion on the subject. Just like if another engineer weighed in with respect to this and said oh, I think that the appellant is engaged in 85% engineering. It's another opinion. It's not a binding opinion on the company. It is just one other person's opinion. But, again, his opinion doesn't suggest that the ultimate decision made by human resources with two audits and two other managers means it was somehow affected by discrimination or discriminatory intent. So then the last point is Ms. Arechega's statement. And there's a few things there. So that's the only thing that they really seem to be tying it to. First, it's a statement in 2008 that occurred. So there's no temporal proximity to a layoff that's occurring in 2011 and not even so much temporal proximity to a 2009 reclassification decision that three other people are involved in. There's an audit done and there's an EEO decision. So there's not a time proximity. Secondly, the context of it, if you look at that statement, which there is somewhat of a dispute over it because certainly Ms. Arechega has no recollection of that statement ever being made. The plaintiff appellant states it was made. But even the context was when there was a question asked, she allegedly said something to the effect, when there was a question asked about layoffs and or some hiring going on regarding some positions, she allegedly made this comment about Boeing hiring younger individuals with bright ideas, words to that effect. Now, that's a hiring point that is being made. There's nothing in the record, Your Honor, that suggested that was her opinion, her motivation, or anything like that. Instead, it was a first-level manager saying what she or opining perhaps what she thought, quote, Boeing, which is a company made up of over 100,000 people, what Boeing was doing, whatever that meant. And so even if you credit that statement, it doesn't suggest that she had any motivation whatsoever or that she was hiring anyone or that she was hiring anyone young or that she hired anyone for the appellant's position, much less a completely different decision a year later regarding reclassification where the appellant was reclassified and the only evidence suggests that she was trying to save people and reclassify two others. Counsel, you've far exceeded your time. Could you wrap up, please? Yes. So my point there, Your Honor, is even taking those facts, if accepted as true, once the employer in the McDonnell-Douglas scheme articulates legitimate, nondiscriminatory, nonretaliatory reason, then plaintiff must show with specific substantial evidence, at most, as Judge Gutierrez said, and although we may differ on that, but at most what Judge Gutierrez said was that could get the appellant's foot in the door on a prima facie case, but certainly not meeting that burden of specific substantial evidence. All right. Counsel, thank you. We understand your point. Thank you very much. Thank you. Rebuttal. Your Honors, I'd like to close by showing Arachiga was the architect of the assignment, the 90 to 10 ratio double assignment, and it put Mr. Jefferson, if it didn't do anything else, it put him in a zone of danger, of high risk, knowing about Leofsky will come, which was on his mind all the time. The problem I have with you, Mr. Evans, is that we don't know if it was high risk. I'm sorry? We don't know whether there was any greater possibility of reduction in force application to the property specialists in 2009 than there was to the people in the engineering department in 2009. I have nothing on that. And that's the evidence that I haven't heard you cite. I don't have anything on that, Your Honor. I'd just like to read a passage from Arachiga's statement on 194 of the record, lines 9 through 13. However, as far as I could tell, and this was back when she was, before she made the change, as far as I could tell, Jefferson had little to no systems engineering responsibilities. Instead, it appeared that Jefferson was primarily performing tasks related to property management, including paperwork relating to the disposition of government property and Boeing property associated with the wind down of the GS program at Seal Beach. Now I'd like to read from a document which was excluded by the judge, even though it came from their files. This is an email that was sent by Arachiga dated March 1, 2010 to Denise Ayers, who is in the human resources department involved in this somewhat too. Denise, I really need your help on this one. This is regarding Lewis Jefferson. I believe Peggy Holton told you about all the trouble we had reclassifying Lewis. He is in systems engineering, but he is not doing systems engineering. I know he was going to do some property management, but we could not find a code that fit his other activities. Looking at all these links below, it seems these folks are out of Florida. I just don't know what to do. I know he does not belong to my group, but I don't know where he belongs. We haven't touched on the retaliation at this point, but it's fully covered in the briefs. I'll leave you with that. Mr. Jefferson was placed in a zone of danger, knowingly in a zone of danger from which he could not extract himself without getting back into engineering and some job. But opposing counsel said that there were reductions in force in the engineering department as well, even more. How can we know whether or not he would have been terminated or laid off if he had remained an engineer? Perhaps the same thing would have happened. With all the years of experience he had in engineering, he would certainly be a prime candidate to be kept rather than muddied up and put into two other classifications and calling him a property assistant, which is just a clerical job and not an engineering job. All right. Thank you, counsel. Thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Eaton